## Burgess et al. v. Belford et al.

February 27, 1948.

J. F. Stewart, Special Judge.

Dysard & Dysard for appellants.

John F. Coldiron and T. E. Nickel for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Affirming.

This is a will contest. Suit was brought by the grandchildren of the testator to set aside, on the grounds of mental incapacity and undue influence, a will executed August 4, 1944. At the conclusion of the evidence, the Court submitted to the jury only the issue of undue influence, and a verdict was returned for the proponents. On this appeal the sole question is whether or not the issue of mental incapacity should likewise have been submitted to the jury.

The testator, B. F. Belford, died in his eighty-ninth year on September 17, 1944. On August 4 preceding he. had executed a typewritten will drafted by J. R. Sowards, his attorney (now Circuit Judge).

This will consisted of three pages, and in substance devised and bequeathed the testator's estate in equal parts to each of his three living children. To three of his grandchildren, a son and daughter of a deceased child, the testator bequeathed $200 each. He specifically referred to five other grandchildren, to whom he had made substantial advancements, but left them nothing.

The principal reason for this contest seems to be that in earlier years the testator had executed other wills leaving a substantial share of his estate to the appellant grandchildren. These descendants contend that the testator, by the execution of these earlier instruments and otherwise, had manifested an intention to distribute his estate more or less equally amongst his children and grandchildren. A will which he had written in 1942 left one-tenth of his property to each of two grandchildren and one-fifth to each of his three living children and to the children of a deceased daughter.

The testator had accumulated an estate of approximately $33,000. In June 1944, he became ill and was taken to a hospital in West Virginia. Examination disclosed that he was suffering from cancer of the prostate gland and a deteriorated condition of the kidneys. He remained in the hospital approximately a month, and was then taken to the home of his daughter Bessie, where he remained until his death the following September. There is no doubt that he was a sick man in a hopeless condition. He, as well as everybody else, apparently realized that he could not long survive. His affliction was extremely painful and he suffered constantly.

On either August 3 or 4, he sent for Judge Sowards. He turned over to his attorney the will which he had executed in 1942, and requested that certain changes be made. A new will was written and submitted to the testator. He was not satisfied with the changes, and after further consultation, the instrument in its final form was re-drafted and executed by him on August 4. It mentions specifically each and every one of the testa-

tor's children and grandchildren. It takes note of certain advancements made to them, and there is no contention that the advancements mentioned in the will were ·incorrect.

Since our only question is whether or not the testator had mental capacity to execute a will on August 4, 1944, we will consider the evidence favorable to appellants on this issue. They contend that the testator: had illusions of neglect; could not carry on a conversation; did not recognize his relatives; was forgetful; was penurious; had a tremor of the hands; and was subject to crying spells. There is some evidence of the above facts.

While in the hospital the testator had complained that his grandchildren were not coming to see him. Apparently this self-pity was not completely justified, but it fails to demonstrate a lack of mental capacity. The grandfather was very ill, was suffering, and was undoubtedly lonesome. His complaint was more normal than abnormal.

With respect to his conversation, it does appear that he would start on one subject and abruptly shift to another. This is not unusual. People generally have been known to change the subject in the midst of a conversation, and such failing is often exhibited by older persons. It is not substantial evidence, however, that they are unable to think clearly and consistently on a subject of importance.

The temporary failure to recognize relatives on certain occasions is a characteristic of one of advanced age. It is not at all extraordinary in this case since the testator had numerous grandchildren and other relatives who had not been to see him very often prior to his last illness.

The testator was somewhat forgetful. This is a difficulty experienced by a great many people, especially from middle age on up. It may indicate a lack of concentration, but does not demonstrate a serious mental aberration.

It is insisted the testator was penurious because he objected to wasting water and electricity. The evidence on this point is a mere dribble, and does not even create a suspicion of mental incapacity.

The testator had a tremor of the hands. This is true, but it was shown that the condition had existed for a great number of years. At any rate, it was a physical, not a mental infirmity.

The last feature of the testator's condition emphasized by appellants is the fact that he would often cry when his relatives came to visit him. Under the circumstances, we do not believe this throws any light on his mental capacity. The testator was a very sick old man, and doubtless realized that he would soon leave this world and the children and grandchildren he loved. The natural tendency of a person in that situation is to express his sorrow in tears.

Appellants introduced an expert, a doctor who specialized in mental and nervous diseases. On the basis of facts recited in a lengthy hypothetical question, he stated that the testator did not have mental capacity at the time he executed his will. On cross-examination, however, the force of his opinion was practically nullified.

The right of the aged, the infirm, and the forgetful to make a will should be guarded the same as that of other rational persons. Kentucky Trust Co. et al. v. Gore et al., 302 Ky. 1, 192 S. W. 2d 749. We have carefully considered all of the evidence most favorable to appellants, and while the proven facts may have been consistent with a finding of mental incapacity, they were not sufficient to establish that ground of contest. The weight, character, and substance of the evidence presented did not furnish "a firm foundation upon which to rest the superstructure of the jury's verdict." Sloan v. Sloan et al., 303 Ky. 180, 197 S. W. 2d 77, 80. We conclude that appellants did not make out a case of mental incapacity, and the trial Court properly withdrew that issue from the consideration of the jury.

Finding no error, the judgment is affirmed.