## Tye v. Tye.

May 9, 1950.

J. B. Johnson, Judge.

L. O. Siler, R. L. Brown and Joe S. Feather for appellant.

T. E. Mahan and C. B Upton for appellee.

JUDGE KNIGHT—Reversing.

Judge H. H. Tye, 80 years of age, a well known member of the Kentucky Bar for more than 50 years, died a resident of Whitley County on July 3, 1948. By his will here in controversy, he disposed of an estate with an appraised value of approximately $88,000. His only child, born of his first wife, predeceased him leaving an infant son, William Gosper Tye, who, as grandson of Judge Tye, was his only heir at law. Twenty-three years before his death Judge Tye was married to his second wife, Dr. Lillian South, appellant herein. Dr. South, at the time of their marriage, was connected with the State Board of Health and continued in that position throughout their married life. In her position it was necessary for her to spend most of her time in Louisville and Judge Tye, on account of his law practice, had to spend most of his time in Williamsburg. They visited each other on week-ends and holidays, and other occasions. The arrangement appears to have been mutually satisfactory and apparently they lived a happy married life. By the will here in controversy, he left to his widow in fee the dwelling house in which they lived in Williamsburg with it contents, outbuildings, and all appurtenances thereto; also two smaller houses in Williamsburg, occupied by tenants, with the provision that the tenant occupying one of these houses continue to do so as long as he desired at a rental of $12.50 per month. He also bequeathed her his Packard automobile, his one share of stock in the Louisville Country Club and a diamond ring. To Cumberland College he bequeathed part of his library and certain scrap books. The residue of his estate, consisting of personal property, he directed should pass to his widow and lawful heirs under the laws of descent and distribution in force at the time of his death. He named his widow as executrix without bond.

This will, which was dated June 26, 1948, was probated in the County Court on July 12, 1948, and shortly thereafter this suit was filed in the Whitley Circuit Court by appellee, Margaret W. Tye, as guardian and next friend of William Gosper Tye, as an appeal from the order of the County Court. She attacked the will on the ground of lack of mental capacity and undue influence brought to bear on the testator. On the trial of the case, the lower court held that there was not suf-

ficient evidence of undue influence to submit that question to the jury and the only question submitted was that of the mental capacity of testator. The verdict of the jury was that when he executed the will dated June 26, 1948, Judge Tye was not of sound mind. This appeal is from a judgment based on that verdict and reversal is sought on the ground that there was not sufficient evidence of mental incapacity to take the case to the jury and that the jury should have been peremptorily instructed to find for the will.

Judge Tye became ill in 1947, and on May 17 of that year he was operated on. It subsequently developed that he had cancer of the pancreas and other complications including jaundice. He was never a well man physically after his operation and at times suffered much pain, for the relief of which he had to take codeine, a mild narcotic, and other non-narcotic drugs. However, he continued many of his activities, made frequent visits to his law office and carried on an extensive correspondence with his doctors in Louisville and with others as indicated by letters filed as exhibits in the record.

In October 1947, he had executed a will which gave to his wife a life estate of the greater part of his estate with remainder to his grandson. According to the testimony of the appellant and her witnesses, in March 1948, he instructed his secretary to delete certain paragraphs from the October will and insert new ones in such a way that the will would not have to be re-executed or re-witnessed. The alleged changes gave the bulk of the estate to Mrs. Tye in fee simple. On June 15, Judge Tye dictated to his secretary a new will, which is the will here involved, which, according to appellant's evidence, is the same as the attempted will of March, except for a provision directing that the Tye Reference Library be given to a local junior college. This will was written up by his secretary and she returned it to Judge Tye for execution on the 16th of June. The witnesses that Judge Tye wanted were not present at that time and the will was finally executed on the 17th of June 1948. This will carried the date of the 26th day of June 1948 in two places, the execution clause and the witnessing clause, although it appears by the evidence that it was in fact executed on the 17th of June. The secretary assumed full responsibility for the error in the date which

was overlooked at the time the will was executed when the secretary was not present.

It is estabished by the evidence and admitted on all sides that Judge Tye was a thoroughly competent lawyer and meticulous in the legal details of anything he did. His mental capacity, except for the last several months of his life, is not questioned but it is the contention of the contestant, appellee herein, that because of the narcotic drugs he had taken for relief from his pain and because of the bad physical condition, his mental condition was so impaired at the time the will in question was executed that he was incapable of making a rational survey of his estate and of disposing of it according to a fixed purpose of his own.

The only medical testimony produced to support appellee's contention was that of Dr. Sanders, who lived across the street from Judge Tye and knew him as a neighbor, but had treated him only a few times professionally. He had last visited him about a month before his death and testified that he was weak and run down physically and was forgetful at times. Asked if in his opinion Judge Tye was mentally competent to make a will, he said he felt that it would have been difficult for him to digest anything complicated because his mind would not concentrate on it. Admitted on cross examination that he did not know the Judge's mental condition on June 15, 16, or 17, 1948, and he wouldn't tell the jury that he didn't have capacity to make a will at that time.

On the contrary, all the medical testimony produced by appellant was to the effect that there was no noticeable change in Judge Tye's mental condition during his illness. This included the testimony of Dr. Richardson, his local physician, who testified that he saw nothing to indicate that he wasn't normal mentally; Dr. Davis of Louisville, his principal doctor during his last illness, who last saw him at the hospital in Louisville on May 27, 1948, and who had had considerable correspondence with him during the last year of his life, testified that he could see no change whatever in his mental condition and that in his opinion he was normal mentally and of sound mind; Dr. Aud of Louisville, who performed the operation in May 1947, had received letters from him during the last year of his life and had last seen him at the hospital on May 27, 1948, testified that

from these letters and his examination of him on May 27, it was his opinion that he was normal mentally and there was no evidence that he was irrational or mentally unbalanced; Dr. Williams, dentist and oral surgeon of Louisville, visited the Judge socially in Williamsburg on June 8, 1948, and talked to him an hour or more. He saw nothing to indicate that he was mentally unbalanced, or that he was under the influence of narcotics; he seemed to be perfectly normal, and he saw no change in him.

There is no medical testimony that Judge Tye had to use narcotics in excessive amounts for the relief of pain or that there was any impairment of his mental powers by reason of its use.

The lay testimony as to Judge Tye's mental condition is quite voluminous and we have carefully read it all to ascertain if there was sufficient evidence of probative value to take the case to the jury, and it is our conclusion that there was not. True, there was some evidence of lapse of memory at times, such as that he failed to recognize a pecan tree on his place, that he tried to pay a paint bill twice, that he repeated conversations and that occasionally his mind wandered. The evidence along these lines was much weaker than that in the recent case of Burgess v. Belford, 306 Ky. 711, 209 S. W. 2d 90, in which it was held that there was not sufficient evidence to take the case to the jury. Mere failure of memory, momentary forgetfulness, or lack of strict coherence in conversation does not render one incapable of executing a will. Sloan v. Sloan, 303 Ky. 180, 197 S. W. 2d 77; Kentucky Trust Co. v. Gore, 302 Ky. 1, 192 S. W. 2d 749, 752. As was said in the latter case: "* * * the courts guard jealously the rights of all rational people, including the aged, the infirm, the forgetful and the queer, to make wills sufficient to withstand the attacks of those left out and those dissatisfied with the expressed desires of the departed * * *."

The tendency of the courts is more and more toward the upholding of wills which are attacked by dissatisfied relatives who are usually able to produce some evidence of peculiarities, failure of memory, or the natural infirmities of age. Even before the decision of this Court abolishing the scintilla rule, Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. 2d 877, it was held in Dossenbach v. Reidhar's Ex'x, 245 Ky. 449, 53 S. W. 2d 731, 733,

that "the proven facts and legitimate inferences drawn therefrom must be something of substance and relevant consequence, carrying the quality of proof, and having fitness to induce conviction." In that case there was more evidence, especially medical testimony, of mental incapacity, than in the instant case, but this court held that there was not sufficient evidence to take the case to the jury. In the Nugent case, the rule, which we have since followed, was laid down that: "When the evidence given at the trial, with all inference that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but should direct a verdict for the defendant." [281 Ky. 263, 135 S. W. 2d 883.]

There was some testimony by a few lay witnesses that in their opinion Judge Tye did not have mental capacity to make the last will dated June 26, 1948. While the opinions of such witnesses constitute competent evidence in will cases, such opinions will not be sufficient evidence to take the case to the jury, unless the facts upon which the opinions are based are such as tend to establish a lack of testamentary capacity. Dossenbach v. Reidhar's Ex'x., supra, and cases therein cited. We think the testimony along that line in this case did not meet this test.

The great weight and preponderence of the evidence, based not on mere opinion but on documentary evidence and physical facts, seem to us to have been such as would have required setting aside the verdict of the jury and would have justified the lower court in directing a verdict for the defendant in the case. Included in such evidence is the correspondence with his doctors in Louisville concerning his physical condition and the medicines he was taking at their suggestion; the correspondence with E. M. Gatliff concerning political appointments; with Mr. Metcalf of Louisville concerning the sources of an old Chinese proverb; with his daughter-in-law, Mrs. Margaret Tye of Florida, concerning business matters; and other correspondence near the time of the making of the last will. About this time he was also working on the scrap books which he gave to Cumberland College, and he dictated a "key" to these books to his secretary. A few days before he dictated his last

will, he addressed the Whitley County Bar Association at a banquet. He also conferred with his active law partner, Mr. Smith, concerning pending litigation of his firm, and engaged in other activities shown in the record, which could not have been the activities of one who was mentally incompetent. We have not quoted the will in full because of its length but we have read it carefully. It was dictated by him to his secretary on June 15, 1948, and from its form, contents, legal composition, and the disposition of his property, there is every indication that it is the work of a mentally competent lawyer. From a careful reading of all the evidence, we are of the opinion that there was not sufficient substantial evidence of probative value to take the case to the jury and to sustain a verdict that testator was mentally incompetent to make a will in June 1948.

Wherefore the judgment is reversed for proceedings consistent with this opinion. Should there be another trial and the evidence is substantially the same, the Court should direct a verdict upholding the will.