Charles L. BUCKMAN, Lorraine C. Pendleton, Landon C. Reed, Bernard J. Thompson, Lee Burt and Roy S. Harkins, doing business under the name and style of Hanna-Basin Construction & Coal Co., a co-partnership, Appellants (Plaintiffs below),

v.

UNITED MINE WORKERS OF AMERICA, Local 7247 of United Mine Workers of America, J. E. Brinley and Milo Picarelli, Appellees (Defendants below).

No. 2903.

Supreme Court of Wyoming.

May 19, 1959.

339 Pac.2d 398

J. Reuel Armstrong, Rawlins, and Harold B. Wagner, of Wagner & Wyers, Denver, Colo., for appellants.

Robert S. Lowe, Rawlins for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

202

204

## OPINION.

Mr. Chief Justice BLUME delivered the opinion of the court.

The parties to this case will be mentioned as plaintiffs and defendants or by name as in the court below. On December 20, 1958, plaintiffs herein commenced an action against the defendants alleging as follows:

1. Plaintiffs are the sole partners and owners of the Hanna-Basin Construction & Coal Company. They are now and at all times hereinafter mentioned have been engaged in the strip coal mining business near Elmo, Carbon County, Wyoming.

2. The United Mine Workers of America is an international unincorporated labor organization. Its Local 7247 has its headquarters in Hanna, Carbon County, Wyoming, J. E. Brinley and Milo Picarelli are the business agents of United Mine Workers of America and of the said local organization.

3. Plaintiffs are the vendees under the terms of a conditional sales contract wherein the Nuggett Coal Company is the vendor. Plaintiffs are in possession of the leases, equipment, land, mines, real property and personal property formerly held by the Nuggett Coal Company, all of the property being located near Elmo, Wyoming, and plaintiffs are operating the property for themselves. All six of the plaintiffs are actively engaged in the coal mining business. They have invest-

ed their capital in the property and are entirely dependent on their business for their support and the support of their families. Plaintiffs have two employees, namely, an office worker and a truck driver. All the remainder of the work done in and around the mine is performed by the plaintiffs themselves.

4. Defendants and their representatives and agents made illegal, unlawful and wrongful demands upon plaintiffs as follows, to wit: (a) That all of the plaintiffs, except Roy S. Harkins, who is the secretary and manager of the co-partnership, immediately become members of Local 7247 of the United Mine Workers of America; (b) That the Local be designated as bargaining agent by the plaintiffs; (c) That the plaintiffs immediately unionize the mine and other operations by compelling their employees to join the Local of the United Mine Workers of America.

5. The demands are impossible demands and plaintiffs refused to accede to them. These demands violate plaintiffs' rights of free choice and of life, liberty and the pursuit of happiness. Plaintiffs do not choose to join the union or to have the Local designated as their bargaining agent, nor can they lawfully coerce their employees to join the union.

6. When plaintiffs refused to comply with the demands of the defendants, and each of them, the defendants in menacing terms and threatening language told the plaintiffs that they would not permit them to operate the mine. On December 15, 1958, defendants caused a great number of pickets to walk up and down the public access roads to plaintiffs' mine, some of them carrying placards and signs reading "Unfair to organized labor". These pickets continued to patrol

the access roads to the plaintiffs' mine, and the defendants have threatened to place on the picket line as many as 250 pickets to patrol in front of the plaintiffs' premises carrying said signs.

7. Plaintiffs' customers, patrons and their employees have been threatened by the defendants and their representatives and pickets by the use of such signs and by standing in the middle of such roads, preventing access to the plaintiffs' premises. Plaintiffs have been threatened by the defendants, their representatives and pickets by being called obscene names in menacing and threatening language such as "we will run you out of business you * * *". Ingress and egress to and from the plaintiffs' place of business was obstructed and interfered with by said defendants and many of the plaintiffs' customers have been intimidated, molested and prevented from doing business with the plaintiffs by said acts, threats and conduct of the defendants.

8. Plaintiffs have protested against these acts, threats and conduct and have requested defendants to desist therefrom, but defendants continue the same conduct as above alleged.

9. On December 15, 1958, only two customers of the plaintiffs entered the plaintiffs' premises, and one of those arrived before the establishment of the picket line. Ordinarily a great number of customers would have come to the plaintiffs' mine and purchased coal therefrom. By reason of the defendants' conduct as above mentioned, plaintiffs have been irreparably damaged in a great amount of money, the amount of which cannot be ascertained by the plaintiffs. If said acts continue as set out herein and as defendants threaten to continue them, plaintiffs will be irreparably dam-

aged and their business greatly injured and destroyed, and the plaintiffs are without adequate legal remedy at law to seek a compensation of aforesaid grievous wrongs so practiced upon them by the defendants.

Plaintiffs accordingly pray a restraining order against the defendants, their officers, members, agents, pickets and representatives from molesting, interfering with, threatening or intimidating plaintiffs and their employees and customers. The plaintiffs also ask damages in the sum of $10,000.

On December 23, 1958, the defendants appeared in this action by their attorney, Robert S. Lowe, and filed a resistance to the motion for temporary restraining order, alleging as follows:

"Come Now Defendants by and through Robert S. Lowe, their Attorney, and respectfully resist the Motion for Temporary Restraining Order made herein by Plaintiff, and Motion for Dismissal of the same on the grounds, and for the reason that:

"(a) Same is prohibited by Article 5, Chapter 54 of the Wyoming Compiled Statutes, 1945.

"(b) That the business involved in this subject litigation is engaged in and affects interstate commerce as Defendants offer to show by evidence to be presented at hearing to be held by this Court December 23, 1958, and therefore, this Court is without jurisdiction to award the relief prayed for by Plaintiffs herein.

"(c) That the within controversy is one of those within the scope and effect of Section 8(b) of the Labor Management Relations Act as amended [29 U.S.C.A. § 158(b)], and that therefore the Congress of the United States has pre-empted the field, thereby depriving the State of Wyoming and its Courts from jurisdiction herein.

"(d) That the picketing, the subject of these proceedings, is peaceful and is thereby protected by Amendment 1 of the Constitution of the United States of America, and also Sections 20, 21, 22 and 37 of [article 1 of] the Constitution of Wyoming."

A hearing was had upon the complaint and the resistance above mentioned on December 23, 1958, before the Honorable Vernon G. Bentley, Judge, presiding. At the end of the hearing the judge presiding stated as follows: "This Court will rule that it has no jurisdiction in this matter." An order was accordingly entered denying the injunction asked by the plaintiffs. Plaintiffs have appealed.

There is but a single question before us in this case and that is whether or not the court erred in holding that it had no jurisdiction. The jurisdiction of the court of the subject matter was invoked by the complaint of the plaintiffs herein. If that complaint stated a cause of action, then and in that event the court acquired jurisdiction and the power and the duty to decide the case. 1 Freeman on Judgments, 5 Ed., § 338; 21 C.J.S. Courts § 33; New River, H. & W. R. Co. v. Honaker, 119 Va. 641, 89 S. E. 960, Ann.Cas.1917C, 132; Belles v. Miller, 10 Wash. 259, 38 P. 1050, citing United States v. Arredondo, 6 Pet. 691, 31 U.S. 691, 8 L.Ed. 547; Goodman v. Winter, 64 Ala. 410, 38 Am.Rep. 13; Grignon's Lessee v. Astor, 2 How. 319, 43 U.S. 319, 11 L.Ed. 283; United States v. Maney, C.C.D.Minn., 61 F. 140. There can hardly be any doubt in this case, as shown by a cursory examination of the complaint hereinbefore set out, that the court had full power and authority to decide this case, notwithstanding the fact that the case involved interstate commerce. Thus it is said in Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.), 346 U.S. 485, 74 S. Ct. 161, 164, 98 L.Ed. 228:

"* * * We have held that the state still may exercise 'its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.'  Allen-Bradley Local No. 1111, United Electrical Radio and Machine Workers of America v. Wisconsin Employment Relations Board, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154. * * *"

In Annotation, 2 L.Ed.2d 1630, 1636, it is said:

"It is well established that the federal labor relations statutes do not deprive a state of power to enjoin mass picketing or picketing involving violence, notwithstanding that interstate commerce is affected * * *."

That the state has jurisdiction in case of picketing by violence, threats or mass picketing is stated in the Annotation, 32 A.L.R.2d 1026, 1029.  Counsel for the defendants refer us to this annotation at page 1036 where it is said:

"While it was held by the Supreme Court of the United States that the National Labor Relations Act, in its original form, did not deprive a state court of jurisdiction to entertain a suit for injunctive relief against a labor union or employees to restrain them from picketing in an illegal manner, such as mass picketing or picketing by way of violence and force, the Supreme Court has never squarely decided that a state court's jurisdiction to enjoin violence in picketing and mass picketing affecting interstate commerce has survived the Labor Management Relations Act. * * *"

But that volume was published in 1953.  In 1956 the Supreme Court of the United States decided the case of United Automobile, Aircraft and Agricultural Implement Workers of America v. Wisconsin Employment

Relations Board, 351 U.S. 266, 76 S.Ct. 794, 799, 100 L.Ed. 1162, and in that case Mr. Justice Reed stated as follows:

"* * * But our post-Taft-Hartley opinions have made it clear that this general rule does not take from the States power to prevent mass picketing, violence, and overt threats of violence. The dominant interest of the State in preventing violence and property damage cannot be questioned. It is a matter of genuine local concern. Nor should the fact that a union commits a federal unfair labor practice while engaging in violent conduct prevent States from taking steps to stop the violence. * * *

"The States are the natural guardians of the public against violence. It is the local communities that suffer most from the fear and loss occasioned by coercion and destruction. We would not interpret an act of Congress to leave them powerless to avert such emergencies without compelling directions to that effect."

In short, the defendant union and its members had no right to engage in mass picketing and, in picketing, make threats, use abusive language, prohibit entrance to the premises to customers of plaintiffs, inflict property damage or obstruct the highways. In addition to the cases already cited, see Allen-Bradley Local No. 1111, United Electrical, Radio and Machine Workers of America, v. Wisconsin Employment Relations Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154; Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151; Ellingsen v. Milk Wagon Drivers' Union of Chicago, Local 753, 377 Ill. 76, 35 N.E.2d 349; Asphalt Paving, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, 181 Kan. 775, 317 P.2d 349; Annotation, 32 A.L.R.2d

1026, 1036, et seq. The trial court must decide whether or not the defendants and the members of the union have committed the prohibited acts, as alleged in the complaint, and make proper orders in that connection.

Counsel for defendants contends that the trial court actually took jurisdiction of the case. He argues that the ruling of the trial court is tantamount to a general finding which is a finding of every special thing necessary to be found to sustain the order. He cites, for instance, the case of Lucksinger v. Salisbury, 72 Wyo. 164, 262 P.2d 396, 264 P.2d 1007 and also mentions the rule that where no special findings are made the presumptions are in favor and support of the trial court's judgment. We have no fault to find with these rules, but we do not think they have any application in the case at bar. A holding that the court has no jurisdiction is not the same thing as a holding that the evidence shows a want of jurisdiction, but means, we think, unless qualified, that the court lacks the power to decide the case or any part of it. We might add that it is quite obvious, after examining the record before us, that the court gave no consideration to the evidence before it except that part which relates to the question of interstate commerce.

The court must, accordingly, assume jurisdiction in this case. This court is primarily a court of review, except in cases in which this court has original jurisdiction or where a constitutional question is legally certified to this court. It is not its function to determine the facts and the law in a case in the first instance. That must be done by the trial court. See 4A C.J.S. Appeal and Error § 699, p. 528; 14 Am.Jur. Courts § 48, p. 277; Art. 5, § 2, Constitution of Wyoming; State v. Kelley, 17 Wyo. 335, 98 P.886.

Counsel for defendants contends that the National Labor Relations Board had exclusive jurisdiction in this case. That would depend it seems upon the following factors: First, the picketing must be peaceful; Second, the plaintiffs must be engaged in interstate commerce; Third, being engaged in interstate commerce is not enough. There is a so-called "no-man's land" which is not occupied by the federal legislation regarding labor relations. If the case falls within this so-called "no-man's land", state courts have jurisdiction in the case to enjoin even peaceful picketing if contrary to the law or the public policy of the state. If, however, the federal legislation covers a case such as the present one, then and in that event state courts have no jurisdiction to enjoin peaceful picketing and the National Labor Relations Board alone has jurisdiction in the matter. Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.), 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546; Stoddard-Wendle Motor Co. v. Automotive Machinists Lodge 942, International Association of Machinists, 48 Wash.2d 519, 295 P.2d 305; Asphalt Paving, Inc., v. International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, 181 Kan. 775, 317 P.2d 349; Friesen v. General Team and Truck Drivers Local Union No. 54, 181 Kan. 769, 317 P.2d 366.

Counsel in the case should point out to the trial court the presence or absence of provisions in the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. showing that this case falls within its provisions, or falls within the field of "no man's land". In other words, they should for the benefit of the trial court critically analyze the provisions of the National Labor Relations Act which might have a bearing in the case at bar.

The judgment of the court refusing to assume jurisdiction is reversed with direction to assume jurisdiction, make a finding of facts and of law and decide the case and make such orders as may be proper. The court may direct that additional testimony be taken, if available, and make such other orders as may be proper or necessary to carry into effect the foregoing opinion.

Reversed with directions.