# Bohannon v. Tracy et al.

Oct. 15, 1943.

J. Wirt Turner, Jr., and C. G. Barrickman for appellants.

Polk South, Jr., and Bernard B. Davis for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

This is an appeal from a judgment of the Shelby Circuit Court adjudging a writing admitted to probate by the County Court as the will of Corda Bohannon not to be in fact her will.

Corda Bohannon died some nineteen months prior to the death of her husband, Dick Bohannon, who quali-

fied as administrator of her estate with the will annexed, but died before completing the settlement of her estate. Without requesting the appointment of an administrator de bonis non, the appellees, who are heirs at law of Corda Bohannon, appealed to the Circuit Court from the order of probate. This procedure was obviously improper since the personal representative of an executor has no authority to administer the estate of the first testator. KRS 395.070. Appellees also failed to make Will Smith, a nephew of the testatrix and a legatee under her will, a party to the appeal. However, since the appellant, who is the chief beneficiary under the will, did not object, either here or in the Circuit Court, to the first of the irregularities noted, and since Will Smith, after the verdict had been rendered, entered his appearance to the proceeding and agreed that the judgment should have the same effect upon him as if he had been made a party to the appeal, we shall treat the proceedings as sufficient to raise the issues which must be submitted to another jury in view of our conclusion that other and more material errors on the part of the Trial Court necessitate the granting of a new trial.

The paper in question was written with a lead pencil by the husband, Dick Bohannon, and is as follows:

"State of Ky    Shelby Co    April 4 11 1934

this being my will I appoint my husban dick Bohanon  to transact all of my business  he is to have my farm  his natural Life then at his death its to go Will Bohannon Is to take care of me while I live

I allso I bequeath to Will Smith  $500 dollars at my death all the rest and residue of my money     goes to my husban and all of my stock he is to keep my mare and the farm and not sell her Will Smith fie    500 dollars  Is to be at my death my money goes to pay my expens of my beril my dets  my husben Executs my business without bond or security

Corda Bohanon

Attest  Will Thurman

J. D. Carter"

It is obvious from an inspection of the original will that the words which occupied the space between the words, "I live" and "I allso" have been erased, and it

is impossible to ascertain what the words immediately following the words "I live" were. However, on the second line of the erasure, preceding the words, "I allso," the words "share estate with my heirs" are discernible with the aid of a magnifying glass. Moreover, the name, "Will Bohannon" seems to have been written in larger letters so as to fill the space from which other words had been erased. Will Bohannon was a nephew of Dick Bohannon, and it is the theory of appellees that Dick Bohannon, in the interest of his nephew, erased from the will words which would have vested appellees with an interest in the farm after Dick Bohannon's death. It is also insisted by appellees that the will was altered in other minor particulars, and that there was no proof that it had ever been properly executed, in which latter contention we find no merit, since both of the attesting witnesses testified that they signed the will as witnesses in testatrix's presence and at her request. Robertson v. Robertson, 232 Ky. 572, 24 S. W. (2d) 282. Neither are we able to agree with appellant's contention that because there was no proof showing by whom or when the erasures or alterations in the will were made, he was entitled to a peremptory instruction directing the jury to find the paper to be Mrs. Bohannon's will. However, instead of authorizing the jury to set aside the entire instrument in the event they believed it had been materially altered after its execution, the Court should have so framed his instruction as to have permitted the upholding of the portions thereof not affected by the alterations. The instruction given by the Court was in the following language: "The Court instructs the jury to find the paper marked 'A', read in evidence and purporting to be the last will of Corda Bohannon, to be the last will of Corda Bohannon, unless they shall believe from the evidence that since said paper was executed by Corda Bohannon, same has been altered or changed by erasing a portion thereof so as to change the effect of said writing, and the will and intention of the decedent, Corda Bohannon; and if you believe said instrument has been so changed or altered then you will find it not to be the last will and testament of Corda Bohannon, deceased."

This instruction could have been made the basis of a correct judgment by inserting in lieu of the concluding words, "you will find it not to be the last will and testament of Corda Bohannon, deceased," the words, "you

will say so by your verdict and no more.'' Since the will was properly executed and there was no proof of mental incapacity or undue influence, the sole issue to be tried was whether the will had been altered after its execution so as to change the effect of the writing; and since the only material alteration indicated by the evidence affected merely the disposition of the farm after the death of the husband, Dick Bohannon, the Court, in the event the jury found that the alteration had been made, should have entered a judgment establishing the will, omitting therefrom the words, "then at his death its to go Will Bohannon is to take care of me while I live.''

Much of the confusion relative to the principles of law applicable to this case seems to have arisen through the failure of counsel and the Trial Court to differentiate between the rules applicable to the alteration of contracts and negotiable instruments and those applicable to the alteration and spoliation of wills. Differentiation is necessary also between material and nonmaterial alterations, as well as between alterations made by the testator with or without intent to revoke and those made by third parties. For these reasons many of the authorities cited are inapplicable to the questions presented in the case at Bar, and, hence, will not be commented upon. Apparently, there is no decision of this Court bearing upon the exact question presented. Therefore, it is necessary to examine the fundamental principles relating to the alteration and spoliation of wills as they may be gathered from the decisions of other courts.

A universally recognized principle is that partial spoliation of a will (defined as a change in the wording after execution made by one who is neither the testator nor authorized by the testator to make the change) committed by the beneficiary or one acting in his behalf avoids the provision which is thus altered, if the alteration is material, as far as his interest is concerned. It does not, however, destroy the interest of other beneficiaries who are not parties to the spoliation, nor does it avoid unaltered provisions in the same will in favor of the spoliator. On the other hand, if one having no interest in the matter changes the wording of the will without the authority of the testator, the spoliation is a nullity, and the words inserted by the stranger are disregarded. If the words erased by him are ascertainable from the will itself or from intrinsic evidence, they are to be given effect. Page on Wills, 2d Ed., ch. 16; Ruling Case Law,

Vol. 28, Wills, Sections 142, 143, 144. Much has been written regarding the presumptions which the law indulges relative to when and by whom unexplained alterations have been made. Among the few general principles which may be considered applicable to the peculiar facts of this case is, that while it is generally recognized that an interlineation or erasure in a will, fair upon its face and entirely unexplained, raises no presumption that the alteration or erasure was made after execution when there are no circumstances shown which cast suspicion upon it, nevertheless, "if there are any suspicious or doubtful circumstances growing out of the mode of the alteration, the ink in which it was made, the fact that it was in favor of the party holding the instrument, and that it is not noted at the bottom, then these and all the other circumstances must be submitted as questions of fact to be determined by the court, in deciding whether the alterations were made before execution or not." Crossman v. Crossman, 95 N. Y. 145.

Where the evidence indicates that the will has been altered by the testator, or with his consent, other questions and presumptions arise which are not relevant to this controversy. Here there was nothing to indicate that the testatrix made or authorized the erasures. Admittedly, the will was in the possession of the husband, whom appellant's counsel now states made the alteration, from the time of his wife's death to the date on which it was offered for probate. Both the testatrix and her husband had been previously married, but neither had had any children. The husband's nephew resided for several years in their home, and while the evidence shows that the testatrix was grateful to him for the services he had rendered her in her illness and old age, it also indicates that her relations with appellees were friendly, and that her relations with Will Smith, who also rendered her services, were cordial. The words discernible under the main erasure indicate that the will, as originally written, expressed an intent that her heirs should share in her estate. As erased and altered, if the language referring to the farm is susceptible of any interpretation, the will indicates a clumsy attempt to vest the ultimate title to the farm in the husband's nephew to the exclusion of her heirs. These circumstances, in connection with the fact that the husband willed his entire estate to his nephew, necessitated the submission of the question at issue to the jury.

If for no other reason, the judgment would have to be reversed because of the admission of incompetent testimony, namely, that of C. A. Randolph, president of the Citizens Bank of Shelbyville, who was permitted to testify, over appellant's objection, that the husband, Dick Bohannon, for the purpose of making evidence in another case, had altered a check drawn by his wife by erasing her name after the check had been cashed, and substituting his own. How prejudicial this evidence was is illustrated by the statement of appellees' counsel that they "never thought," until they discovered the alteration of the check, that Dick Bohannon would have altered his wife's will. True, the Court, at the conclusion of all of the testimony, instructed the jury not to consider Mr. Randolph's testimony for any purpose, but this is one of those cases in which the incompetent testimony was so prejudicial that we doubt the efficacy of the Court's attempt to obliterate its effect.

These conclusions render it unnecessary for us to comment upon appellant's insistence that the failure of appellees to make Will Smith a party to the appeal to the Circuit Court entitles appellant to a reversal of the Circuit Court's judgment.

Judgment reversed for proceedings consistent with this opinion.