Mabel G. WARD, Executrix of the Estate of
Lida P. Hamm, et al., Appellants,

v.

Hiram NORTON et al., Appellees.

Court of Appeals of Kentucky.

Dec. 18, 1964.

Weldon Shouse, Shouse, Barker & Coplin, Lexington, for appellants.

Bradley & Blanton, Paris, for Hiram and Nancye Norton.

Charles Cox, Carlisle, for Rachel C. Norton and Carlisle Cemetery Co.

MONTGOMERY, Judge.

Hiram Norton and his wife by this action contested the will of Lida P. Hamm on the grounds of undue influence and lack of mental capacity. From a judgment based on a verdict declaring the writing not to be the will of the testatrix, appellants have appealed.

■ Appellees have moved to dismiss the appeal because of the failure of the appellants to have the court state in the judgment the actual value in controversy. KRS 21.070. The alternative is to determine whether the judgment, when construed in connection with the pleadings, fixes the value of the amount or thing in controversy. Rutherford v. Modern Bakery, Ky., 310 S.W.2d 274.

Appellees filed a pleading in the circuit court designated "Appeal from Probate." The county court had admitted the writing to probate as the will of the testatrix and had permitted appellant Mabel G. Ward to qualify as executrix. Attached to the circuit court pleading as "Exhibit B" was a certified copy of the county court order probating the will, qualifying the executrix, and fixing her bond at $10,000. This order indicates that the estate involved had a value in excess of $2,500.

■ Under CR 10.03 a copy of a written instrument which is an exhibit to a pleading is a part of the pleading for all purposes. Foshee v. Daoust Const. Co., CA 7, 185 F.2d 23. The certified copy of the county court order filed with the pleading is considered as a written instrument within the meaning of the rule and a part of the pleading. The exhibit as a part of the pleading when construed with the judgment is considered as sufficiently determinative of the value of the thing in controversy. The motion to dismiss the appeal is overruled.

The testatrix died February 16, 1960, at the age of 87 years. She left surviving as her heirs at law a nephew, Hiram Norton, an appellee; and R. L. Norton, Jr., now deceased, and Katherine Norton Nixon, grandnephew and grandniece, the surviving children of R. L. Norton, Sr., deceased. Mabel G. Ward, formerly the wife of R. L. Norton, Sr., was a beneficiary under the will and the designated executrix.

The writing in controversy was dated May 19, 1959. After providing for the payment of debts and funeral expenses, $1,000 was bequeathed to the Carlisle Cemetery for perpetual care of "my graves." Item II thereof provided:

> "All my property, both real and personal, with the exception of my diamond ring, I leave in four (4) shares; one (1) share to Hiram Norton; one (1) share to R. L. Norton; one (1) share to Kathryn Norton Nison (sic); and one (1) share and my diamond ring to Mabel G. Ward."

For inheritance tax purposes the estate was valued at approximately $27,000.

On the trial many witnesses were introduced by each side to sustain its position on the issues of undue influence and mental capacity. At the conclusion of the testimony in behalf of the contestants, appellees, appellants moved "to dismiss so much of the appeal as pertains to undue influence."

At the conclusion of all of the testimony, the motion was renewed, and the appellants also asked the court not to instruct the jury on undue influence for lack of proof. Both motions were overruled. The jury was instructed on both issues. No question was raised concerning the sufficiency of the proof introduced by appellees on the issue of lack of mental capacity. The jury found the writing not to be the last will of Lida P. Hamm, without stating any finding on the two issues involved.

Appellants argue that the court erred in giving an instruction on undue influence,

in refusing an instruction offered by appellants, and in refusing to grant a new trial sought on the ground that the verdict was the result of passion and prejudice.

On the issue of mental capacity, ten witnesses testified favorably concerning the mental capacity of the testatrix. These included Mabel G. Ward, her husband, the two witnesses to the will, a mortician, a tenant, and three doctors. In substance, their testimony, based for the most part on long acquaintance, was that the testatrix's mind was normal or sound, that she knew the character of her estate and its value, her relations, and the natural objects of her bounty.

The testimony introduced by appellees to show lack of mental capacity on the part of the testatrix was based on the following: She continually thought someone was peeking in her window; she thought someone was changing her medicine; she repeated stories; she had a bad memory; she imagined that her nurses talked about her; she imagined that someone was trying to poison her; she imagined that someone was flashing a light in her window; she was not consistent; and she inquired about the health of persons long since deceased.

 It is questionable whether the evidence to show lack of mental capacity would be sufficient to sustain the verdict. Mere weakness of mental power, old age, failure of memory, momentary forgetfulness, or lack of strict coherence in conversation does not render one incapable of executing a valid will. Kentucky Trust Company v. Gore, 302 Ky. 1, 192 S.W.2d 749; Tye v. Tye, 312 Ky. 812, 229 S.W.2d 973; Warren v. Sanders, Ky., 287 S.W.2d 146. The right of rational people, including the aged and infirm, to make a will is jealously guarded. Warnick v. Childers, Ky., 282 S.W.2d 608. See also Bickel v. Louisville Trust Company, 303 Ky. 356, 197 S.W.2d 444; Teegarden v. Webster, 304 Ky. 18, 199 S.W.2d 728; Burgess v. Belford, 306 Ky. 711, 209 S.W.2d 90; Waggener v. General Association of Baptists,

Ky., 306 S.W.2d 271. The failure of appellants to question the sufficiency of the evidence on the issue of mental capacity is, in effect, a concession that the evidence was sufficient to take the case to the jury on this issue, thus presenting only the question of the sufficiency of the evidence on undue influence as raised by the two motions.

 However, when a will contest is based on both undue influence and lack of mental capacity, evidence that tends to show both need not be as convincing as would be essential to prove one or the other alone. Hines v. Price, 310 Ky. 758, 221 S.W.2d 673; Roland v. Eibeck, Ky., 385 S.W.2d 37 (decided December 11, 1964). The evidence of mental infirmity is relevant and material on the issue of undue influence.

The evidence on the issue of undue influence also was conflicting. Jimmy Henry, a long time businesswoman and acquaintance of the testatrix, testified that Mrs. Hamm "was easily influenced" and at times "could be very easily" influenced since the death of her son, which occurred in February 1959. She also said that she had heard the testatrix say that she did not intend for Mabel G. Ward to have the diamond ring. A minister gave similar testimony concerning the ring. There was contrary evidence that Mrs. Hamm, by an earlier writing, had indicated a desire for Mrs. Ward to have the ring.

Ethel Shea, a nurse at the hospital, said the testatrix was at times easily influenced and lacked sufficient mental capacity to make a will. The county attorney, the co-administrator of the hospital, a banker, a doctor, and others gave testimony indicating that the testatrix was susceptible to undue influence.

The circumstances surrounding the execution of the will may have been considered as significant by the jury. Mabel G. Ward had been a long time friend of the testatrix. Mrs. Ward had formerly been mar-

ried to Mrs. Hamm's nephew. Their two children would have received one-half of the remaining estate by intestacy or by the will, except for the diamond ring bequeathed to their mother.

According to Mrs. Ward, her relationship with Mrs. Hamm was very close. She had visited Mrs. Hamm weekly during the five years next before the testatrix's death. She had made the funeral arrangements at the death of Mrs. Hamm's son. She had assisted Mrs. Hamm in various matters and it was Mrs. Ward's attorney in Lexington, a stranger to Mrs. Hamm, who had prepared a will. According to appellants, that writing was objected to by Mrs. Hamm because her first name was misspelled and because it did not provide for Mrs. Ward to have the ring. Mrs. Ward's husband rewrote the will to make the corrections. The Wards took Mrs. Hamm in their car to the grave of her son in the Carlisle Cemetery where the will was executed. Mrs. Ward apparently retained possession of the will.

It is unnecessary to relate the contrary evidence offered in behalf of appellants since the motions made by them raised the sufficiency of appellees' proof. The testimony concerning old age and mental infirmity, coupled with the relationship between Mrs. Ward and Mrs. Hamm, and the circumstances of the preparation and execution of the will, together with proof that Mrs. Hamm was easily influenced, constitute sufficient evidence to justify overruling appellants' motions, giving an instruction on undue influence, and sustaining a verdict. Bennett v. Bennett's Ex'r, 244 Ky. 394, 51 S.W.2d 241; Moran's Ex'r v. Moran, 248 Ky. 554, 59 S.W.2d 7; Hines v. Price, 310 Ky. 758, 221 S.W.2d 673; McKinney v. Montgomery, Ky., 248 S.W.2d 719; Hollon's Ex'r v. Graham, Ky., 280 S.W.2d 544. Wood's Ex'r v. Devers, 14 Ky.Law Rep. 81, 19 S.W. 1, is of special interest.

Appellants tendered an instruction concerning mental capacity, which the court refused. The instruction given on mental capacity conforms to the approved instructions on this issue. Stanley's Instructions to Juries, Volume 2, Second Edition, Section 749, page 566, and cited cases. No merit is found in this contention.

Judgment affirmed.