**Otha BLANKENSHIP, Appellant,**

**v.**

**Addie BLANKENSHIP, Appellee.**

Court of Appeals of Kentucky.

April 23, 1965.

W. Elijah Coffey, Jamestown, for appellant.

Jack B. Miller, Jamestown, Hollis E. Edmonds, Russell Springs, for appellee.

HILL, Judge.

This case involves a contest of the will of Asa Blankenship, father of appellant, Otha Blankenship, and the husband of the appellee, Addie Blankenship. The latter was the second wife of the testator. They were married December 1, 1926.

Asa Blankenship died December 4, 1963, at the age of 93, leaving a will dated November 19, 1962. His will provided for the payment of all debts and funeral expenses; that a marker be placed upon his grave and directed that all of his property, real and personal, be sold to meet the above bequests and the proceeds be distributed, one-fourth to his wife, Addie, and three-fourths to his son, Otha.

The appellee contested the will on three grounds. First, she contended the testator verbally directed that the residue of his estate be divided one-half to her and the other half to the son. She next relied upon undue influence and mental and physical incapacity to execute the will on the date it was executed. These three propositions were submitted to the jury which returned a verdict finding the instrument not to be the will of Asa Blankenship. From the judgment entered on this verdict this appeal is prosecuted.

The propriety of (1) a will contest by the widow, and (2) submission to the jury of the issue of a "verbal direction" of the testator in this will contest case are not before us, since the parties joined issue allowing the widow to contest the will and raised no objections to the instructions, the only question on this appeal is whether the evidence was sufficient to support the verdict.

We are first confronted with the well-recognized rule of law announced in Hines v. Price, 310 Ky. 758, 221 S.W.2d 673, wherein it is said:

As undue influence is peculiarly a question for the jury, this Court has been reluctant to upset the finding of the jury where there is more than a scintilla of evidence to support it.

Furthermore, where mental and physical incapacity, as well as undue influence, are relied upon, this Court said in Roland v. Eibeck, Ky., 385 S.W.2d 37 (1964):

"* * * when a contest is pitched on both mental incapacity and undue influence, evidence that tends to show both need not be as convincing as would be essential to prove one or the other alone."

Commenting further on undue influence and its very nature, the Court in the Eibeck case, supra, went on to state:

"It may be granted that the mere opportunity to exert undue influence is not, in and of itself, enough to justify a finding that it was in fact exercised. Cf. Waggener v. General Association of Baptists, Ky., 306 S.W.2d 271 (1957). Nevertheless, undue influence 'is a subtle thing and can rarely be shown by direct proof. In many instances the facts and circumstances leading up to the execution of the desired instrument must be relied upon to establish its existence,' McKinney v. Montgomery, Ky., 248 S.W.2d 719, 721 (1952), * * *."

Keeping these principles of law in mind, we have in this case a 93-year-old man who had previously suffered a stroke and had fallen and broken a hip. Admittedly, he had some physical as well as mental weakness. After his injury and after he had lived with the appellee for nearly 36 years he was taken from the hospital to the home of his son, the appellant, where he remained until his death. Appellee contends that the appellant would not allow her to take her husband away from his home, to a rest home, where they could be together. There was also testimony that Otha and his wife, Rooney, stated that the testator would not be taken out of their house except over their dead bodies.

Admittedly a confidential relationship existed between father and son and there was some participation by either the beneficiary or his wife in arranging for the preparation and execution of the will and after its execution it was handed to the wife of Otha.

We are not unmindful of the fact that the will was prepared by an attorney who testified that he took the information from the testator, prepared the will accordingly and returned in a few days and was present during its execution, and that Dr. Charles E. Peck, when asked whether he thought testator understood what he was doing, answered: "Apparently so." O. D. Lawless stated that his mind was clear that night. On the other side, the appellee testified that the testator had periods when his mind was affected to such an extent that he wanted to go to see his mother who had died in 1925.

Ovalene Bryant, a nurse for Mr. Blankenship, testified that she was present when the will was executed and when the provision of the will was read giving Addie one-fourth and Otha three-fourths, Asa said: "No, no, I want Addie to have one-half and Otha one-half." There is some corroboration of this testimony of the nurse and the evidence of Oliver D. Lawless. He stated that Asa said something about wanting his wife to have her portion although the attorney, who prepared the will, and the doctor who was present when it was executed, did not recall such an occurrence.

Another circumstance about which there can be no doubt, Asa was 93 years old and, as far as this record shows, never attempted to make a will before the one in controversy when he was, to say the least, an invalid in the home of his son, the chief beneficiary, and in the absence of his wife, the contestant, with whom he had lived over a quarter of a century.

The jury composed of 12 citizens of the locality, presumably acquainted with some or all of the witnesses and the parties, heard and observed all of the witnesses.

At first blush it may appear that Otha had the better part of it since he had a greater number of witnesses, yet, we are reluctant to upset the verdict of the jury when it was supported by substantial evidence and circumstances.

WHEREFORE, the judgment is affirmed.