Evelyn RAYMOND, etc., et al., Appellants,

v.

Edward H. SCHLOEMER et al., Appellees.

Court of Appeals of Kentucky.

Oct. 21, 1966.

Rehearing Denied Jan. 20, 1967.

Kenneth L. Anderson, Robert P. Hobson, Woodward, Hobson & Fulton, William M. Harvin, D. H. Robinson, Harvin & Robinson, Louisville, for appellants.

John T. Fowler, Frank E. Haddad, Jr., Louisville, for appellees.

MONTGOMERY, Judge.

This is an appeal from a judgment holding that an instrument dated April 19, 1962, and executed by Albert J. Schloemer, now deceased, is not his will. The appellants are: Evelyn Raymond, individually and in her capacity as the executrix of the will, Joyce McLennan, Garrett Hampton, and William M. Harvin, beneficiaries. The appellees are a brother and child of a deceased brother of the testator. Appellants urge that the trial court erred in overruling appellants' motions for a directed verdict and for a judgment notwithstanding the verdict and that the court erred in the instructions given.

The first ground of claimed error is that the evidence is not sufficient to sustain the verdict. The will was attacked on the grounds of lack of capacity and undue influence. In reviewing the evidence to determine its sufficiency to sustain the verdict in favor of the contestants, the testimony favorable to them is examined. The trial consumed five days and the evidence is voluminous.

Albert Joseph Schloemer died June 16, 1962. Prior to October 1954, Albert and his brother Louis, neither of whom ever married, had been engaged together in the meat business in Louisville. In October 1954, they went to live with Evelyn Raymond, a second cousin. Both were elderly men at that time. Louis was hospitalized and died shortly thereafter, leaving a considerable estate, the bulk of which was left to Albert, who continued to live with Evelyn until his death.

The remaining near relatives of Albert's were a brother, Edward H. Schloemer; Edward's daughter, Edna Mae Schloemer; and a nephew, Arthur Joseph Schloemer, the only son and child of a deceased brother, Arthur. Each is a nonresident of Kentucky. Edward and Arthur Joseph were contestants and are appellees.

The purported will was executed on April 19, 1962. The estate consisted principally of 2800 shares of Allegheny Power System stock valued at the date of his death at $118,300. The named beneficiaries were: Garrett Hampton, William M. Harvin, and Wanda Cox Bailey, 100 shares each; Arthur Joseph Schloemer and Edna Mae Schloemer, 200 shares each; Joyce R. McLennan, 1000 shares; and the residue, including 1100 shares, was left to Evelyn, the mother of Joyce. Evelyn was named executrix, with her husband, William, as alternate personal representative. Edward did not receive anything.

Hampton was a stockbroker who had handled Louis' account and also an account for Evelyn. Albert's transactions were limited mostly to transfers of stock to Evelyn. Harvin was an attorney at law and had known Evelyn since 1943. He first represented her in 1953. He advised Albert in 1961 concerning taxes on a gift to Evelyn, and in 1962, in a dispute with one Meisel. Evelyn took Albert to Harvin for counsel. Harvin was also employed concerning the rezoning of some real estate to which Evelyn had title.

Shortly after Albert and Louis came to live with Evelyn in October 1954, and after Louis' death, Albert made gifts to Evelyn valued at the date of transfer as follows: May 17, 1955, real estate, $5,000; October 10, 1955, stock, $103,000; October 27, 1955, stock, $54,500; totaling $162,500. These gifts are shown on the inheritance tax return of Albert's estate prepared by Harvin for Evelyn as executrix. In 1955 or 1956, an air-conditioned room was added to Evelyn's home for Albert.

There was evidence to show that in two wills executed by Albert in January and May 1957, respectively, he had left the bulk of his estate to Edward and Arthur Joseph, with Wanda Cox Bailey, a close personal friend, as executrix; that the relationship existing between Albert and his near relatives, Edward, Arthur Joseph, and Edna Mae, worsened during the time that he lived in Evelyn's home; that Evelyn sought to isolate Albert from them and to

prevent communication between them; that on February 21, 1962, Evelyn obtained from Albert stock valued at $113,850, which she claimed as a gift; and that Albert thought he was transferring the stock to her in order to permit her to secure the debit balance of $57,716.58, which she owed Hampton's brokerage firm. The balance was paid immediately after the transfer.

Further, it is shown that in November and December 1961, Albert's health began to fail, he then being 75 years of age, and he sought medical care until his death; that he suffered from a severe heart condition and arteriosclerosis in an advanced stage; and that he suffered a stroke on May 4, 1962, was hospitalized on May 6, 1962, and died on June 16, 1962. He was completely incapacitated during this period. Albert received medical treatment from Dr. Norman Glazer on March 20, April 4, April 13, and April 19, 1962. Each time he was accompanied by Evelyn. On the April 13 visit, Dr. Glazer made the following notation in his record:

"Patient is of sound mind at this time. I signed note to this effect presented by Mrs. William Raymond."

On that same day, April 13, 1962, Albert executed the first of a series of five documents culminating in the execution of the will on April 19, 1962. The April 13, 1962 document was a power of attorney in favor of Evelyn and William Raymond, containing a certification of Dr. Glazer as to Albert's mental soundness and capacity. Two days later, Albert executed a trust agreement in favor of Evelyn as trustee, by which he transferred all of his estate, including 2900 shares of stock. Evelyn settled the Meisel claim by transferring 100 shares of stock to him, leaving the 2800 shares which constituted the bulk of his estate.

On the April 19 visit, Albert executed the purported will, with Dr. Glazer and his two nurses as witnesses. Each of them signed a prepared certificate of the execution to the will which contained in part the following:

"* * * the said Testator was of sound and disposing mind, to the best of our knowledge, information and belief."

There was evidence to show that Evelyn, acting on the advice of Harvin, had previously asked Dr. Glazer if he would sign such certification. Appellees had medical testimony that Albert lacked the capacity to make a will.

The April 17, 1962 trust agreement contains a statement that Albert was "feeling that he is not able to manage said estate and save it from loss." A signature card was executed on April 17 by Evelyn, as trustee, and by Albert, giving her access to his bank account of $3,171.39. On April 18 he signed a written authorization for Evelyn to have access to his safety vault box at his bank. The bank record shows that Evelyn entered the box on April 20. The box was found to be empty after Albert's death.

Harvin prepared the power of attorney, trust agreement, and will. On June 12, 1962, he was paid $1,000 by Evelyn, as trustee, for his services in preparing the first two instruments and in the rezoning matter. The bequests in the will were set forth in accord with a piece of paper listing the names and amounts, but he could not say whether the list had come from Evelyn or Albert. He had not kept the paper. In addition to the bequest in his favor, Harvin testified, he expected to receive a fee of $18,000 for his services as an attorney for the estate. It is noted that the estate, excluding the gifts and transfers valued at $97,175, was valued at $122,457.71.

In reviewing the sufficiency of the evidence to sustain a verdict for the appellees, the evidence will be considered in the light most favorable to the appellees. The search is for substantive probative evidence from which the jury may draw legitimate inferences upon which to base a verdict. From such review the jury was justi-

fied in concluding that at the time the will was executed Albert was an infirm old man who lacked the requisite mental capacity to make a will. The jury had abundant evidence from which to conclude that Albert was unduly influenced by Evelyn, assisted and counseled by Harvin. Each had benefited from the relationship with Albert and might well have had great expectations of further benefit. Evelyn had received gifts totaling $276,350 before the will. Her distributive share under the will, according to the inheritance tax computation, was valued at $83,996.94. Further, her daughter, a third cousin of the testator's, received the next largest bequest. The jury might well have concluded that there was no legitimate justification for a bequest to Garrett Hampton, the stockbroker who, undoubtedly, had already received the usual compensation for his services. It could have concluded that this was one of the many steps in a meticulously planned preparation to draw an "unbreakable" will. Considering that Evelyn received $162,500 in gifts within approximately twelve months after Albert came to live with her, the jury would have been justified in believing that she intended from the very first "to take him to the cleaners," to use the vernacular. Under the proof in this case there is no difficulty in deciding the question of the sufficiency of the evidence to support a verdict in favor of appellees.

The contention concerning the instructions is more worthy. The court gave the usual instructions on mental capacity and undue influence appropriately defined, which were justified under the testimony. No question is raised concerning the correctness of these instructions.

The objectionable instruction is Instruction IV, which is as follows:

"The evidence shows that the contestee, William M. Harvin, attorney, was the draftsman of the Will in question in this litigation, and that he was the confidential adviser and attorney for the deceased, Albert J. Schloemer, at the time of the preparation and execution of the Will, and that he was also a legatee receiving a benefit under the said Will, and because of these facts the jury might infer undue influence in the execution of the Will."

Appellants urge that the instruction is too broad, citing Woods' Ex'r v. Devers, Ky., 19 S.W. 1, and Hanna v. Eiche, 258 Ky. 282, 79 S.W.2d 950, dealing with undue influence as it affects a part of the will instead of the whole will. They urge that Instruction IV should have been limited to an invalidation of the Harvin bequest only instead of the whole will. Cf. Bohannon v. Tracy, 295 Ky. 456, 174 S.W.2d 722, involving spoliation of part of a will.

Appellants apparently concede that some paragraphs of the purported will may have been obtained as the result of undue influence. A supplementary instruction embodying this principle and purporting to be based on the Hanna case was tendered by them. It was rejected by the court.

Appellees cite, in answer, Wood v. Rigg, 152 Ky. 242, 153 S.W. 214, which by dictum states the converse of the situation here, and Rounds v. Rounds, 214 Ky. 294, 283 S.W. 77, in which it was held that undue influence which invalidates the entire will may be that of any one or more of the beneficiaries or of a third person. Appellees point out that the Rounds case dealt with lack of capacity and undue influence while the Hanna case dealt only with undue influence. Instruction IV should have been limited to the bequest in favor of Harvin under the Woods and Hanna cases unless the undue influence exercised by Harvin extended to the whole will, in which event it is bad because of undue prominence it gives to the relationship of Harvin. Stanley's Instructions to Juries, Volume 1, Section 28, page 54; Cincinnati, N. O. & T. P. Ry. Co. v. Commonwealth, Ky., 376 S.W.2d 307. Under the circumstances here it is hard to confine any undue influence exercised by Harvin to the bequest in his favor, especially considering his relation-

ship with Evelyn. Any undue influence exerted by him would have affected the entire document. Accordingly, the giving of Instruction IV was error. In the event of another trial, should the evidence be substantially the same as on the first trial, the instructions given on lack of capacity and on undue influence should be sufficient to present the issues.

Judgment reversed.