Faye Burgess GIBSON, Executrix, etc.,
Appellant,

v.

Carlene Sampson GIPSON et al., Appellees.

Court of Appeals of Kentucky.

Feb. 16, 1968.

Robert L. Geveden, Bardwell, Joseph J. Grace, David R. Reed, Reed & Scent, Paducah, for appellant.

M. C. Anderson, Wickliffe, Henry Jack Wilson, Mayfield, for appellees.

MONTGOMERY, Judge.

Faye Burgess Gibson, as the executrix and sole beneficiary under the will of Jessie Lee Sampson, appeals from a judgment entered on a verdict holding that a certain writing was not the last will of Jessie Lee Sampson. The case was submitted to the

jury on the issues of undue influence and lack of mental capacity. The appellees, two nieces and a nephew, are the heirs at law of the decedent.

■ It is urged that appellant was entitled to a directed verdict because there was a failure to show undue influence or lack of mental capacity and that the court erred in the admission and the rejection of certain testimony. In reviewing the claimed error of failure to direct a verdict for the appellant, the evidence must be considered in its strongest light in favor of the party (appellees) against whom the motion was made, and the advantage of every fair and reasonable intendment that the evidence can justify must be given such party. Raymond v. Schloemer, Ky., 409 S.W.2d 809.

Jessie Lee Sampson, a resident of Carlisle County, died on February 2, 1962, being then seventy-one years of age. Her entire estate was left to appellant, who was named as executrix. Appellant was not related to Jessie. She was a niece of Ruth Sampson's, a sister-in-law of Jessie's, whose deceased husband, Luther, was Jessie's brother.

■ The rule in a will contest was stated in Roland v. Eibeck, Ky., 385 S.W.2d 37, 7 A.L.R.3d 992, thus:

"* * * when a contest is pitched on both mental incapacity and undue influence, evidence that tends to show both need not be as convincing as would be essential to prove one or the other alone. Hines v. Price, 310 Ky. 758, 221 S.W.2d 673, 676 (1949)."

See also Ward v. Norton, Ky., 385 S.W.2d 193, and Blankenship v. Blankenship, Ky., 389 S.W.2d 933.

■ In addition, when slight evidence of the exercise of undue influence and the lack of mental capacity is coupled with evidence of an unequal or unnatural disposition, it is enough to take the case to the jury. McKinney v. Montgomery, Ky., 248 S.W.2d 719; Sutton v. Combs, Ky., 419 S.W.2d 775, and cases collected therein.

The will in question was executed on September 15, 1959. It was prepared by Robert L. Geveden, county attorney of Carlisle County. It was witnessed by Eulene Coil and Angie Hall, employed, respectively, by a local bank and the Department of Health.

The testatrix had made two wills previously. In 1943 she had devised her entire estate to a sister, who predeceased her. The sister had lived with and had looked after her. After the sister died in 1957, the testatrix devised her entire estate to her brother, Luther, who also predeceased her. Luther, too, had looked after her affairs. In each instance the will was prepared by a lawyer, who also witnessed the will.

Jessie, as she was familiarly known, was never married. She had lived in or near Bardwell all of her life. She did not do well in school and was taken out when she was in the fourth grade because of her inability to learn. She did not attend church. There was testimony that she could not read or write but could sign her name. She depended on others to write her checks, which she signed.

Seventeen witnesses were introduced to show that the testatrix lacked the requisite mental capacity and was unduly influenced to make a will. These included relatives, ranging in degree from appellees, as nieces and a nephew, to a fifth cousin, and included some who were just relatives of appellees. Friends and acquaintances, including a bank president and an insurance agent, also testified. Principally, their testimony was based on knowledge and observation gained from a long acquaintance.

There was testimony that the testatrix was dependent on others to transact business for her; that she was not a strong-willed person; and that Ruth Sampson exerted an influence over her. They visited back and forth.

Opal Trainer testified that Jessie had told her many times prior to the date of the purported will that Ruth Sampson had told her to make a will. Ruth denied this or that she had used any persuasion, but the testimony quoted below indicates that she had discussed with Jessie the matter of making a will, thus:

"Q. Did you ever use any persuasion—state whether or not you used any persuasion on Miss Jessie to make a will to Mrs. Gibson?

"A. I never mentioned Faye or anybody else to Jessie in regard to her making a will. Jessie owned this property with no strings attached and I thought she had a right to do with it what she wanted to. I told her time and time again I wanted nothing to do with it and I had nothing to do with it."

Ruth said that, at the suggestion of Jessie, she had told appellant that the will had been made and that appellant was the sole beneficiary. She also had told the appellant not to say anything about the will. There was evidence to show that appellant was Ruth's favorite of her eighteen or twenty nephews and nieces.

After the will was executed, Ruth said, Jessie asked her to read the will, she did, and they took the will to the bank and placed it in Ruth's lockbox, where it remained until Jessie died. Jessie also had other papers in the lockbox. After Jessie's death, Ruth presented the will to the county judge for probate.

■ Viewing the evidence in the light most favorable to the appellees, as the jury was privileged to do, the testatrix undeniably did not have strong mental capacity; she was in her late sixties when she executed the writing; she had long depended on others to aid her in the transaction of her business; Ruth Sampson had the opportunity to influence Jessie; Ruth was a strong-willed person and had talked beforehand with Jessie about making a will; Ruth had read the will, which was an indi-

cation that Jessie wanted her to know that she had named Ruth's favorite niece as the sole beneficiary; and Ruth had kept the will in her lockbox about three years until Jessie died and had told no one, except her niece, about it, and had presented it for probate. The evidence of undue influence and lack of mental capacity, coupled with evidence of unequal and possibly unnatural disposition, was enough under the cases cited to require that the case be submitted to the jury.

■ The validity of the explanation of the unequal or unnatural disposition is a matter of which the jury must be convinced by the testimony offered by appellant. Apparently the jury rejected any explanation here. The cases cited by appellant deal with either the single invalidating factor of undue influence, lack of mental capacity, or unequal disposition, and are not in point. This case is distinguishable from the cases cited by appellant and from Trust Dept. of First National Bank v. Heflin, Ky., 426 S.W.2d 128 (decided February 2, 1968), because all three factors are involved here.

■ There is no merit in appellant's argument that the court erred in admitting testimony that the testatrix could easily be influenced and that Ruth was a strong character " * * * when there was no evidence that testatrix was unduly influenced by anyone." This argument begs the question since the very testimony complained of was admissible in order to show undue influence.

■ Appellant also urges that the court erred in refusing to permit the cross-examination of a witness by asking him separately concerning whether the testatrix knew the natural objects of her bounty, the nature and extent of her estate, and whether she could make a rational survey thereof and dispose of it in accord with a fixed purpose of her own. When the witness was examined in chambers for the purpose of an avowal, he said that the testatrix knew her kinfolk; that he thought

she knew the extent of her property; and that he doubted if she could have disposed of her property according to a fixed purpose. The net effect of the avowal is a negative answer, the same as given by the witness on direct examination. If there was error, it was not reversible error.

Judgment affirmed.

All concur.