**Matt ADAMS, Appellant,**

v.

**Juanita CALIA, etc., et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 1, 1968.

Herman E. Leick, Corbin, for appellant.

Terry E. Forcht, Sutton, Martin & Forcht, Corbin, for appellees.

WADDILL, Commissioner.

This action contests the validity of the will of Mrs. Ida Earls, who died on March 25, 1965, at the age of 92. Her estate consisted of cash in the sum of about $11,000 and real estate valued at $6,000. The trial judge sitting without a jury found that the grounds of contest, i. e., undue influence and mental incapacity, were sustained by the evidence and entered a judgment invalidating the will. On this appeal it is contended that appellant was entitled to a judgment upholding the will as there is no substantial evidence which supports the findings and conclusions of the trial judge.

The evidence discloses that on March 16, 1965, while Mrs. Earls was boarding at the home of her nephew, Matt Adams, she signed a will which: directed the payment of her debts and funeral expenses; devised her real estate and $1,000 to her only surviving son Hansford Earls; devised the remainder of her property to Matt Adams, and appointed him executor.

Mrs. Earls had been a widow for approximately twenty years prior to her death. She had three sons, but only Hansford survived her. One son, Howard, was killed in an accident during 1950 and another son,

Walter, had died only seven weeks prior to his mother's death.

Several years before her death Mrs. Earls sustained an injury to her hip and the results of this injury caused her to become bedfast. She refused to have a physician examine her and, in this connection, we observe that she continued to reject medical treatment, even during her last illness.

Because of her crippled condition Mrs. Earls relied primarily upon relatives and neighbors to bring her food, to pay her bills, to cash her pension checks, and to otherwise look after her. On occasions she stayed in the homes of friends. About a year before her death she became helpless and was transported in an ambulance to the home of Matt Adams, a nephew, where she paid $30 a month for room and board until she died.

Matt Adams, the chief beneficiary of Mrs. Earls' will, testified that, shortly after Walter Earls died, Mrs. Earls expressed the desire to make a will. Matt stated that when he was unable to get Hansford Earls to assist this endeavor, he obtained the services of an attorney to prepare the will. Matt admitted that he consulted the attorney about the will in Mrs. Earls' absence, but he asserted that the terms of the will were in conformity with her desires and instructions.

According to Matt and his wife, when Matt returned home from the attorney's office, he informed Mrs. Earls he had had a will prepared in accordance with her instructions and that Mrs. Earls responded "all right." Later that same evening a neighbor and his wife came to Matt's home at his request and served as subscribing witnesses to the will. Although these witnesses testified that Mrs. Earls was able to sit up in bed and sign the will with some assistance from Matt's daughter, none of them stated that Mrs. Earls read the will prior to her signing it. However, for the purpose of this review we will presume that Matt had told Mrs. Earls about its terms before she signed it.

In summary, some of the neighbors of Mrs. Earls described her as "fussy," "contrary," and "didn't hardly know what she was doing half the time." Some of her acquaintances testified she "was very badly mixed up," "didn't realize her son Walter was dead," and "didn't know her son Hansford nor how much property she had." Other friends and acquaintances testified that she "continually quarrelled," was "awfully contrary," and "loved to hear her own voice a little better than anybody in the world." Also, that she was "awfully tight, cantankerous, and mean as the devil." Her son Hansford testified his "mother's mind would come and go," and a friend of Mrs. Earls testified that "she was a crazy woman most of the time." There is, however, testimony which tends to show that Mrs. Earls had the mental capacity to make a will.

■ One of the tests to be applied in determining the validity of a will is an inquiry as to whether the testator had sufficient intelligence to know his property, the natural objects of his bounty and his duty to them and to act according to a fixed purpose. Sutton v. Combs, Ky., 419 S.W. 2d 775. When this test is applied in the instant case questions arise concerning whether Mrs. Earls had testamentary capacity and also whether undue influence was exerted upon her since she allegedly made an unnatural disposition of her property by giving most of her estate to Matt, rather than to her own son.

■ There is no direct evidence that undue influence was exerted upon Mrs. Earls. Nevertheless, the facts that Mrs. Earls was living in Matt's home and was entirely dependent upon him for everyday needs of life are circumstances that, when considered in the light of the fact that the will gave Matt over one-half of the estate, and was executed in Matt's home by a ninety-two-year-old bedfast lady, tend to prove undue influence as well as to place in question her testamentary capacity. Cf. Gibson v. Gipson, Ky., 426 S.W.2d 927;

Roland v. Eibeck, Ky., 385 S.W.2d 37, 7 A.L.R.3d 992. Aside from what we have heretofore said, we believe the evidence we have quoted herein, of itself, would support a finding that Mrs. Earls lacked testamentary capacity at the time she signed the paper purporting to be her will.

Wherefore, we are unwilling to hold as a matter of law that the will should be upheld and that Matt should prevail in the case as contended by the appellant. What we do decide is that we find sufficient evidence to support the findings of fact and conclusions of law of the trial judge on the issues involved herein.

The judgment is affirmed.

All concur.