Mabel SELF, Executrix of the Estate of Daisy Burdon, Mabel Self, Individually, Appellant,

v.

R. W. SCHOOLING, Sr., et al., Appellees.

Court of Appeals of Kentucky.

Jan. 22, 1971.

Homer Parrent, Jr., Louisville, for appellant.

Wilbur Fields, Louisville, for appellees.

EDWARD P. HILL, Jr., Judge.

The appeal is taken from a judgment finding that neither of two instruments, one dated in 1967 and the other in 1968, was the last will of Daisy Winard Burdon, but that an instrument dated November 21, 1961, was her last will. The appellant is the proponent of the 1967 and 1968 wills. Appellant stood to take $2,000 under the 1961 will; whereas, she would take the entire estate ($150,000) under either the 1967 or 1968 will. Clearly she was interested in establishing the validity of either of the last two wills.

At the time of her death on October 31, 1968, testator had no living child or surviving husband, and she was 78 years of age. By the 1961 will, the major part of her estate, valued at around $150,000, was left to her nephew, Clarence W. Vaughn, for life, with the remainder to go to the Church of Christ and the Christian Church both of Jeffersontown, Kentucky.

Appellant argues she was entitled to a directed verdict upholding the 1967 and 1968 wills (a) because appellees' proof did not "exclude periods of lucidity and the testimony of subscribing witnesses was not impugned"; (b) because appellees' evidence of "mental impairment did not show continuity down to the day of the will's execution"; and (c) because of improper argument of counsel for appellees.

The similarity of appellant's arguments (a) and (b) makes it possible to treat them as one.

We can readily agree with appellant that she correctly expounds the law requiring one who questions the mental ca-

pacity of one to make a will to prove the continuity of the insanity down to the date of its execution (Warnic k v. Childers, Ky., 282 S.W.2d 608 (1955)). We cannot, however, accept appellant's argument that appellees have failed to meet the burden of proof. The record in this case is voluminous as are the briefs filed by appellant (29 pages) and by appellees (39 pages). This case presents a simple question on appellant's first argument, and that question is whether the verdict has substantial support in evidence. See Yates v. Wilson, Ky., 339 S.W.2d 458 (1960); Massachusetts Bonding & Insurance Co. v. Huffman, Ky., 340 S.W.2d 447 (1960); and CR 52.01. We shall not further burden this record or the reporter system except to point out that Dr. John A. Bishop, who treated testator for "several" years, testified as follows:

"Q. 9 What was the reason for taking her from Twinbrook to St. Joseph's on February 5, 1967?

"A. At that time she had what we consider medically a cerebral vascular accident, but from the lay terms you speak of it as a stroke."

*  *  *  *  *  *

"Q. 18 Now, you take the date June 27th—June 22, 1967. I want to ask you whether in your opinion as a doctor she had sufficient mind to have a fixed determination of how she wanted to dispose of her estate; two, the natural objects of her bounty; three, the nature and extent of her estate; did she have mental capacity on one or any of those three points?

"A. I would say no.

*  *  *  *  *  *

"Q. 20 The 22nd, correct. That's June 22, 1967. Now from then until October 10, 1968, I want you to state whether or not her condition improved or deteriorated?

"A. It gradually deteriorated.

*  *  *  *  *  *

"Q. 26 And you had known her for a span of a quarter of a century at least, is that true?

"A. At least that long.

*  *  *  *  *  *

"Q. 30 Well, would you give the jury your medical opinion of her on October 10, 1968?

"A. Well, the way I saw this individual was from the time she went to St. Joseph's Infirmary with this cerebral vascular problem there was a gradual deterioration of her mental capacity and also of her physical being. Gradually she went down, down, down and, in spite of anything we could do, her progress was downhill. She gradually went into what we would consider more of a vegetable type of individual."

*  *  *  *  *  *

"Q. 43 Was she capable either on June 22, 1967 or October 10, 1968 to have a fixed purpose as to how she would want to dispose of her estate?

"A. I don't think so.

"Q. 44 Did she have a mind at that time sufficient to know the natural objects of her bounty?

"A. I don't think so.

"Q. 45 Did she on either of those dates have sufficient mind to know the nature and extent of her estate?

"A. I don't think she knew it.

*  *  *  *  *  *

"Q. 51. During this period of time either on June 22, 1967 or October 10, 1968, I will ask you to state whether or not in your opinion she had sufficient strength and mental capacity to sign her name to any document unaided?

"A. I don't think she could. I think this for two reasons. One is I don't think she could have remembered sufficiently to write it. Secondly, I didn't

see her use her hands sufficiently to make letters, and I don't believe she could have written her signature to anything."

Other witnesses gave substantial evidence tending to establish mental incapacity, but we shall not detail their evidence except to say that one of them was the Reverend John Pound, minister of the Church of Christ of Jeffersontown, Kentucky, until 1966 (this church is a beneficiary under the 1961 will). Reverend Pound visited the testator weekly from February 5, 1967. While he expressed no opinion as to testator's legal mental capacity to make a will, he gave facts from which the jury could reasonably conclude that she did not have such mental capacity in 1967 and 1968, the dates of the last two purported wills.

 Finally we consider appellant's contention that improper statements and arguments were made by counsel for appellees. Appellant states in her brief that she relies "primarily on the deceit of counsel" for appellees in his opening statement relative to matters he expected to prove. Appellant specifically objects to the argument of appellees' counsel to the effect that "Aunt Daisy wouldn't sign any papers of legal import unless I approved it."

Appellees presented evidence that testator relied heavily on counsel for appellees over a long period of time. This was a circumstance the jury was entitled to consider for what it was worth.

Appellant also contends that she was prejudiced by appellees' argument that the signatures on the 1967 and 1968 wills were forgeries. Although the trial court previously ruled that the genuineness of the signatures on the two last wills was not in issue, we think the evidence of the handwriting expert was competent and argument thereon was not improper.

It should be kept in mind that we have in this case the contention with support in the evidence not only of mental incapacity, but undue influence. Less proof is required under these circumstances. Roland v. Eibeck, Ky., 385 S.W. 2d 37 (1964); Blankenship v. Blankenship, Ky., 389 S.W.2d 933 (1965); and Gibson v. Gipson, Ky., 426 S.W.2d 927 (1968).

We might also mention that in the 1961 document there appear fifteen items, or bequests. Under Item III there are three separate bequests, and under Item V there are six separate bequests. Also under Item VI there are ten separate bequests.

The purported wills of 1967 and 1968 contain less than thirty words, including date and signatures. While this circumstance is not in itself controlling, it is a circumstance that may properly be considered from the standpoint of undue influence.

It is concluded that the verdict has substantial support in the evidence and that the substantial rights of appellant were not prejudiced during the jury trial.

The judgment is affirmed.

All concur.